Presiding Judge Scott
delivered the opinion of the court.
The following agreed statement presents the facts in this case:
*279 “D. V. Burrell was a depositor of the State Bank of Rocky Ford; that at the time of the failure of said bank he had on deposit in said bank a balance of $627.71; that prior to said date, to-wit, on the second day of October, 1907, he had made and executed to the State Bank of Rocky Ford his certain promissory note for the sum of six thousand dollars, due December 20th, .1907, interest at 10 per cent.; that prior to the maturity of said note the same, together with other notes, were by the State Bank of Rocky Ford assigned, as collateral, to the First National Bank of Pueblo, Colorado, for a loan aggregating the amount of $56,000 made by the First National Bank of Pueblo, Colorado, to the State Bank of Rocky Ford, and for which there was assigned at the time of the closing of the said the State Bank of Rocky Ford, $116,000 of notes; that subsequent to the appointment of the receiver, the petitioner herein, by application to the district court, was granted leave to pay said note to the First National Bank of Pueblo, Colorado, which was demanding payment of the same, without waiver of any rights of off-set which might exist in his favor; that he thereupon paid on said note three thousand dollars ; that the note, when hypothecated with the First National Bank of Pueblo, was not yet due; that the debt to secure which this note and others aggregating $116,000 were hypothecated with the First National Bank of Pueblo is not yet fully paid; that none of the collateral so hypothecated has been turned back to the receiver of the State Bank of Rocky Ford; that the balance of the collateral in the hands of the First National Bank of Pueblo, and unpaid is of uncertain value.”
*280 Upon hearing the court directed that the receiver collect and pay out of the proceeds of the returned collaterals by the First National Bank of Pueblo, appellee’s deposit pro rata with others similarly situated, according to the amount of their several deposits. From this order the receiver appealed.
The appellant, the receiver of the State Bank of Rocky Ford, complains, first, that the judgment was rendered upon the basis of a statement of fact by the court not justified by the record. That is to say that the court recites as a statement of fact “that each of the claimants including the appellee having paid the First National Bank of Pueblo their respective notes to the State Bank of Bocky Ford,” while it is agreed in the statement of facts admitted, “that he thereupon paid on said note $3,000;” that the note having been for $6,000 it was not paid as recited by the court in the statement entered. Counsel then contends that the court is restricted to the facts admitted in the case, and hence the order of the court, for such reason, may not be sustained. If this were a statement of the whole matter in this regard it is purely technical in this case. _ But the order appealed from was made in the receivership case proper then pending, and in which tfie court had before him all the facts bearing upon the receivership. Hence he was not confined to the stipulation for his finding that the entire note had been paid, which must have appeared from the record of the whole case in which he was at that time determining but one feature.
It was admitted by counsel on oral argument that at the time the court entered the order, the en *281 tire note liad been paid. If so the court liad the fact before him and it was his duty to take note of it in entering the order complained of. The objection is trivial and without merit, but it is so persistently urged, that we feel constrained to refer to it. But if the court had inadvertently stated the fact as to whether all or only part of the note had been paid, it could not effect the order entered in any sense. It will be observed that the receiver was ordered to first collect out of the collaterals returned to him by the First National Bank of Pueblo, and make pro rata payments, etc. Now if the note of appellee had been returned to the receiver with only $3,000 of it paid, certainly appellee would have been entitled to his off-set as against the unpaid portion of the note, and the receiver would be left without ground for contention at all.
It is the well settled rule in this country that mutual agreements that are due bank and depositor may be set-off as against each other, and also that the bank’s authority and duty to do this is continued to the receiver, and that the depositors’ defenses are not impaired by the bank’s insolvency.
But the real contention of the appellant is that the court erred in holding as a matter of law, that the receiver should pay to the appellee the pro rata amount of his deposit out of the proceeds of returned collaterals coming into his hands from the First National Bank of Pueblo, after the debt to that bank had been paid. At the instant of the bank’s failure, appellee had on deposit the sum of $627.71, and at the same time the bank held appellee’s unmatured note in the sum of $6,000 which had been deposited, together with other notes owned by the *282 failed bank', and of tbe total face value of $116,000 as collateral or to secure tbe payment of $56,000 owed by tbe State Bank of Rocky Ford to tbe First National Bank of Pueblo.
It would appear from tbe language of tbe court’s order, tbat there were other depositors in tbe same situation as tbe appellee, and tbat payment was ordered to be made in all of these cases, in proportion to their several deposits.
It should be stated tbat when tbe receiver was appointed tbe appellee filed bis claim for tbe full amount of bis deposit, and tbat before be paid tbe full amount of bis note held by tbe Pueblo State Bank as collateral, be presented tbe question to tbe court and secured an order to tbe effect tbat such payment should not prejudice bis rights in tbe premises.
Accepting the rule of off-set as above stated, it would seem that the action of the court in this case was both equitable and just.
Counsel for both parties assert that they have been unable to find but one adjudicated case bearing upon the question under consideration, and that is the case of Becker v. Seymour, 71 Minn., 394, wherein the precise question was involved. In that case the depositor bad given his note for $500 to the bank and bad a deposit of $170 at. the time of the failure of the bank. This note with others, and the interest, aggregating a face value of $616,721.69, was pledged to another bank to secure a note of the insolvent bank in the sum of $207,964.68. The pledgee bad compelled the payment of the depositor’s $500 note and afterward, and upon tbe payment of the pledgee’s note from the insolvent bank, the re *283 mainder of the collaterals was returned to the receivers. The depositor secured an order from the court for the payment of his deposit out of the proceeds of the returned collaterals, as in this case, and the order of the court was upheld by-the supreme court. The reasoning of the court in that case seems sound and entirely applicable to the case at bar, and is as follows:
“Under these circumstances the respondent was justified in paying the balance of his note under protest, and seeking redress from the receivers. The result of compelling him to pay the balance of $170.90 on his note was to increase the fund in the hands of the receivers arising from the • collaterals returned by just that amount, to which neither the receivers nor the general creditors have any equitable claim, for the reasons already stated. If the pledgee had recognized the equity of the respondent, and had not enforced payment of the balance due on the note, but collected the amount thereof from the other col-laterals, the note would have been returned to the receivers; and, while .the aggregate amount of col-laterals returned would not have been thereby changed, yet the fund to be realized by the receivers would have been reduced $170.90 because when the note came back to the receivers the unpaid balance thereon would have been at once canceled by the respondent’s deposit. But instead of returning this note, as it ought to have done, the pledgee returned other collaterals of .equal amount, against which there was no offset, so far as the record discloses; hence there is no escape from the conclusion that the fund in the hands of the receivers arising from the returned collateral is $170.00 larger than it would have *284 been if the respondent’s equity in the premises had been regarded. In its last analysis, this case is simply one where the receivers have obtained, not from the assets of the insolvent, but from the respondent, through and by the act of the pledgee, $170 which does not equitably belong to them, or to the general creditors. If the receivers are required to repay this sum to respondent, a wrong will be righted, and no injustice done to others. Equity regards that done which ought to have been done, and in this case it will treat the unpaid balance of $170 due on the respondent’s note as offset by his deposit of equal amount, and regard his payment of $170 on the note, as against the receivers, as having been made to them, through and by the act of the pledgee, under protest and without consideration, and require them to repay the amount from the fund in their hands arising from the returned collaterals, which was increased pro tanto by such payment.”
Decided May 13, A. D. 1912.
Rehearing denied July 8, A. D. 1912.
Judgment is affirmed.
All the judges concurring.